STATE, NEW YORK, LAKE ERIE AND WESTERN RAIL-
ROAD COMPANY, PROSECUTOR, v. YARD, COMMIS-
SIONER, AND HUGHES, COLLECTOR.

1. The prosecutor owned ten acres of upland, and claimed to own a right
of reclamation over more than twenty acres of land under water in the
Hudson river, fronting the upland. *Held,* that a valuation of the
whole as "thirty acres of land," at so much per acre, did not invalid-
ate a tax based on such appraisement under the Railroad Taxation
act. *Rev., p.* 1166.
2. Even though the claim of a right of reclamation were groundless, the
tax would still be sustained, unless it were shown that the value of the
ten acres, with the appurtenant riparian rights, was less than the ap-
praisement.
3. It is proper, under the Railroad Taxation act, to appraise the land
and improvements separately.

On *certiorari.* In matter of taxation. The facts appear
fully in the opinion.

Argued at November Term, 1880, before Justices DIXON,
REED and PARKER.

For the prosecutor, *Cortlandt Parker.*

For the defendants, *P. Bentley.*

The opinion of the court was delivered by

DIXON, J. This *certiorari* brings up for review an assess-
ment of taxes against the prosecutor for the year 1879, on
account of lands and improvements in the township of Wee-
hawken, Hudson county.

The valuations were made by the commissioner under the
Railroad Taxation act, approved April 2d, 1873. *Rev., p.*
1166.

The title of the prosecutor to the property assessed rests upon
a deed from Jay Gould, which describes the tract to be con-

veyed as (in substance) bounded on the west by a defined line upon the upland, two thousand feet in length, and on the north and south by lines drawn easterly at right angles from the extremities of said first line to the middle of the Hudson river, " together with all the land under water in said river easterly and in front of said upland and within the said northerly and southerly lines, as far easterly as the right and title of the party of the first part to the said land under water extends, and all the water rights and other rights and privileges of the said party of the first part, whether derived by legislative act or otherwise, to reclaim, improve and appropriate to their own use the said land under water within said lines, to the middle of the Hudson river."

The title of Jay Gould to the land under water was the title of the Hoboken Land and Improvement Company, and that corporation appears to have had no right thereto except such as its charter conferred. *Pamph. L.* 1838, *p.* 92.

The commissioner's statement of valuation of land is in the following form : " Thirty acres of land, at $17,500 per acre, $525,000."

The extent of land not covered by water, embraced in the foregoing description, is ten and four-tenths acres; and the prosecutor insists that it did not own the land under water, and had merely a right of reclamation thereof, and that therefore the assessment should be reduced to a tax on the appraised value of ten and four-tenths acres only.

If it were not for some expressions of judicial opinion presently to be noticed, I should be strongly inclined to think that the prosecutor has no title to, or right in any of the land below high-water mark, save such as pertains to it as riparian owner. The basis of all its claim thereto is the fourth section of the charter above mentioned, which provides that the Hoboken Land and Improvement Company " shall have power to purchase, fill up, occupy, possess and enjoy all land covered with water fronting and adjoining the lands that may be owned by them, and they may construct thereon wharves,

harbors, piers and slips, and all other structures requisite and proper for commercial and shipping purposes."

The absolute ownership of the land under water was in the state. It does not seem to me that the language of this section should be construed as in the least affecting that title. The words purport merely to confer *power*, *capacity*, to do the things mentioned; and the authority first conferred, and presumably first to be put in operation, is, *to purchase*. Indeed, it was idle to give the power to purchase land under water if, without purchasing, the other powers could be exercised thereon. According to the settled rules of construction applied to public grants, it should seem that the state, by this charter, parted with no proprietary rights in public lands.

But in *Hoboken Land and Improvement Co.* v. *Mayor, &c., of Hoboken*, 7 *Vroom* 540, Mr. Justice Depue delivering the opinion of the Court of Errors, says: "The title to the soil between the high-water line as shown on Loss' map, and the present high-water line, was originally in the state. It became the property of the defendants (Hoboken Land and Improvement Company) by reclamation under the powers contained in their charter." "The grant to the defendants is not of lands of the state in express and definite terms. The right conferred is a mere privilege of reclamation and appropriation to private uses." From these statements it appears to have been considered that the state had granted to this company a right to reclaim the state's lands under water in front of the company's property, and to own the land so reclaimed. In this view of the charter, the prosecutor, as it claims, owns not only the natural upland, but the artificial also, and has besides a privilege of reclamation and consequent title in the lands under water, so far as the right of navigation and the laws of the state establishing external lines of filling permit such reclamation to be made.

That the area over which these interests of the prosecutor extend, embraces thirty acres, is not disputed, nor is there any proof that their value is less than the appraisement.

The question then is, whether it is permissible to tax as

land this right of reclamation. An affirmative answer, substantially, is given in the case of *State* v. *Sippel*, 1 *Dutcher* 530. There, the fringe of the shore, with a right to wharf into the river, was assessed as so many lots of land, which were mapped out both above and below the water line, and each lot had a distinct value assigned to it. But, because the aggregate of the values fixed upon all the lots did not exceed the real worth of the fringe with the right to wharf, the court affirmed the tax.

Even if the prosecutor should be regarded as having no rights in the water-bed, still the case would only be reduced to a level with *State* v. *Jersey City*, 1 *Dutcher* 525, where an assessment like that in *State* v. *Sippel* had been made, although the prosecutor owned merely the fringe, and had no rights against the state below the water line. Yet, this court refused to disturb the tax, the value being not unjust, and the description being regarded as simply form.

So here, the term "acres of land" must be treated as describing the prosecutor's interests in the land, whatever they were; and the phrase "$17,500 per acre," as indicating, not the value of each acre by itself, but only a basis of calculation upon which the value of the prosecutor's rights in the whole tract may be computed.

In the next place, it is objected that "the assessment is double, because, first, the land is assessed by the acre, and then the improvements are specifically assessed."

But manifestly, such double valuation was not intended and has not been made. The first section of the Railroad Taxation act speaks of the valuation of the real property of companies and of all the improvements thereon; and doubtless, with this in view, and in order to show more particularly the subjects of his appraisement, the commissioner has specified the buildings, etc., distinctly from the land. Such a course is quite proper.

The tax should be affirmed, with costs.